UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) Docket no. 2:19-cr-00099-GZS |
| JENNY SANTANA-VASQUEZ, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON GOVERNMENT'S MOTIONS IN LIMINE**

Before the Court are the following motions in limine filed by the Government: (1) Motion in Limine to Preclude Defense Expert Testimony Pursuant to Federal Rules of Evidence 401, 403, and 702 (ECF No. 147), (2) Motion in Limine to Admit Certain Statements by Defendant and to Exclude Certain Statements by Defendant (ECF No. 148), and (3) Motion in Limine to Exclude Evidence or Argument Pertaining to Defendant's Immigration Status, Family Background, Potential Punishment, and Collateral Consequences of Conviction (ECF No. 149). To aid the parties in preparing for trial, the Court provides the following pretrial rulings.

**I.   Motion in Limine to Preclude Defense Expert Testimony
Pursuant to Federal Rules of Evidence 401, 403, and 702 (ECF No. 147)**

The Government seeks to preclude "the testimony of Defendant's proposed expert witness, Janine Arvizu, concerning the reliability of lab results and the integrity of the drug evidence in this case." (ECF No. 147, PageID # 610.) In the alternative, "the [G]overnment requests a <u>Daubert</u> hearing prior to Arvizu's direct testimony to determine whether her testimony satisfies the requirements of Rule 702." (ECF No. 147, PageID # 610.) On the record presented, the Court concludes this Rule 702 objection is without merit.

Under Rule 702 of the Federal Rules of Evidence,[1] which governs the admissibility of expert testimony, "a proposed expert witness must be sufficiently qualified to assist the trier of fact, and . . . his or her expert testimony must be relevant to the task at hand and rest on a reliable basis." United States v. Diaz, 300 F.3d 66, 73 (1st Cir. 2002). "[T]rial courts perform a gatekeeping role in regulating the admission of expert testimony under Fed. R. Evid. 702." Id. "The party seeking to introduce the evidence has the burden of establishing both its reliability and its relevance." Milward v. Rust-Oleum Corp., 820 F.3d 469, 473 (1st Cir. 2016).

There are "four factors that may assist a trial court in determining the admissibility of an expert's testimony: (1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." United States v. Mooney, 315 F.3d 54, 62 (1st Cir. 2002) (citing Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 593-94 (1993)). However, this list is "not definitive or exhaustive, and trial judge enjoys broad latitude to use other factors to evaluate reliability." Id. "The Rule 702 inquiry is a flexible one" and, although it is "to be made at the outset," it need not "be made in a separate, pretrial hearing, outside the presence of the jury." Diaz, 300 F.3d at 73-74 (internal citations and quotation marks omitted); see United States v. Phillipos, 849 F.3d 464, 471 (1st Cir.), as clarified on denial of reh'g, 869 F.3d 15 (1st Cir. 2017) (explaining that there is no requirement that the Rule 702 assessment be made only after a Daubert hearing); Cortes-Irizarry

---

[1] Federal Rule of Evidence 702 provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

v. Corporacion Insular De Seguros, 111 F.3d 184, 188 (1st Cir. 1997) ("A trial setting normally will provide the best operating environment for the triage which Daubert demands.")

As evidenced by Arvizu's curriculum vitae, she holds a degree in chemistry and has over thirty years of experience in laboratory operations and management, with a focus in "quality assessment of laboratories and analytical data." (ECF No. 147-3, PageID # 623.) She has extensive experience as a quality auditor of various laboratories. (Id., PageID #s 623-25). Based on her review of various laboratory materials the parties exchanged during discovery, she is prepared to offer opinions on the sample integrity, method validity, and reliability of analysis related to HETL's testing of the substance recovered from Defendant. (Id., PageID #s 626-28, 631-34.) The Court finds that Arvizu is, at least in part, "sufficiently qualified to assist the" jury and that "her expert testimony [is] relevant to the task at hand and rest[s] on a reliable basis." See Diaz, 300 F.3d at 73; see also United States v. Minaya, No. 10 CR 1179, 2012 WL 260252, at *2 (S.D.N.Y. Jan. 27, 2012) (concluding Arvizu was qualified to testify as expert witness in criminal case involving distribution of heroin). Specifically, she is qualified to testify as an expert witness regarding the accuracy, reliability, and quality of the records of the State of Maine's Department of Health and Human Services' Health and Environmental Testing Laboratory ("HETL").

For these reasons, the Court declines to exclude outright the testimony of Arvizu or convene a Daubert hearing. Rather, because the Court concludes that Arvizu's testimony meets the requisite "threshold of reliability, it should be presented to a jury and 'tested by the adversary process – [by] competing expert testimony and active cross-examination.'" United States v. Vargas, 471 F.3d 255, 265 (1st Cir. 2006); see Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

Likewise, the Court is satisfied that Arvizu's testimony regarding the HETL records generally meets the admissibility standards of Rules 401 and 403.[2] To the extent that the Government suggests Defendant's inquiries into the quality of HETL's records and procedures should be limited to "cross-examination of the [Government's] experts who performed the testing," the Court declines to impose such a limitation on Defendant prior to the presentation of the Government's case. (Id., PageID # 616.)

However, the Court does agree with the Government with respect to one aspect of Arvizu's proffered testimony: Arvizu's testimony that "[t]he laboratory's qualitative identification of fentanyl in the subject evidence should not be assumed to reliably represent the seized evidence." (ECF No. 147-3, PageID # 628 (regarding the August 2022 results); see id., PageID # 633 (offering a similar opinion on the April 2019 results).) As the Government notes, Arvizu's area of expertise and proposed expert testimony relate to the "quality of lab records and procedures" and do not extend to "the reliability of the testing itself" or fentanyl testing specifically. (ECF No. 147, PageID # 615.) Thus, based on the record before it, the Court does not find that Arvizu is qualified under Rule 702 to provide expert testimony on "[t]he laboratory's qualitative identification of fentanyl" in this case. (See ECF No. 147-3, PageID #s 628 & 633.) Moreover, the Court also agrees with the Government that Arvizu's opinion that HETL's identification of fentanyl in the subject evidence "should not be assumed to be reliable" is likely to confuse the jury because it "implies that evidence is unreliable without actually asserting that opinion, much less providing a proper basis for it." (ECF No. 147, PageID # 616.) Therefore, the Court will exclude this specific testimony under Rule 702, as well as under Rule 403 based on a preliminary finding that it is likely to confuse the jury while being, at best, minimally probative.

---

[2] This general ruling does not foreclose the Government from raising relevancy objections to any specific line of questioning at trial.

For the foregoing reasons, the Government's Motion (ECF No. 147) is DENIED IN PART and GRANTED to the extent that the Court will not allow Arvizu to offer testimony that the HETL results "should not be assumed to reliably represent the seized evidence."

## II.  Motion in Limine to Admit Certain Statements by Defendant and to Exclude Certain Statements by Defendant (ECF No. 148)

The Government's Motion "seeks to admit portions of two audio recorded statements made by Defendant shortly on [or] about the date of the charged offense." (ECF No. 148, PageID # 636.) Those statements are transcribed in two exhibits the Government has attached to its Motion and referred to as Statements 1 and 2. The parties have since agreed upon the admission and exclusion of certain portions of those statements.[3] (See generally ECF No. 171) (orange-highlighted portions representing statements that will be excluded at trial and non-highlighted portions representing statements that will be admitted). At the pretrial conference on October 31, 2022, the Government represented that it intended to introduce at trial the recorded statements via video with closed captioning, to which defense counsel did not object, and that it did not intend to introduce transcripts of the recorded statements.

In light of the parties' agreement, the Government's Motion (ECF No. 148) is GRANTED WITHOUT OBJECTION to the extent it seeks to admit the redacted statements provided to the Court. (See ECF No. 171.) As discussed at the pretrial conference, prior to introducing these close-captioned videos at trial, the Government shall notify the Court so that it may first provide a limiting instruction to the jury regarding the closed-captioned videos.[4]

---

[3] At the pretrial conference on October 31, 2022, Defendant represented that she does not object to the portions of the statements that the Government seeks to admit or exclude. The Court notes for the record that Defendant has preserved her objections to the admission of her statements on the basis that they were not voluntary.

[4] The Court's instruction will be modeled off Rule 2.09 of the Pattern Criminal Jury Instructions for the District Courts of the First Circuit. The Court will address Defendant's other proposed cautionary instruction in its final instructions. See ECF No. 152, PageID # 722; ECF No. 165, PageID # 1069.

### III. Motion in Limine to Exclude Evidence or Argument Pertaining to Defendant's Immigration Status, Family Background, <u>Potential Punishment, and Collateral Consequences of Conviction (ECF No. 149)</u>

The Government seeks "to preclude Defendant from introducing any evidence pertaining to Defendant's immigration status, family background, health condition, post offense-rehabilitation, potential punishment, and any collateral consequences of conviction such as deportation." (ECF No. 149, PageID # 707.) This evidence, the Government maintains, "is irrelevant as a matter of law" and "would be unfairly prejudicial and confuse the issues that are properly before the jury." (<u>Id.</u>, PageID # 708.) In her Response (ECF No. 153) and at the pretrial conference, Defendant agreed not to reference "any of the aforementioned circumstances" at trial. Therefore, the Government's Motion (ECF No. 149) is GRANTED WITHOUT OBJECTION.

To the extent Defendant has reserved the right to seek introduction of evidence on one or more of these topics "if the government's evidence opens the door" (ECF No. 153, PageID # 725), she shall seek permission from the Court outside of the presence of the jury before raising any of the topics covered by this ruling.

All of these pretrial rulings are made WITHOUT PREJUDICE to counsel renewing their objections or seeking further opportunities to proffer outside the presence of the jury.

SO ORDERED.

/s/ George Z. Singal
United States District Judge

Dated this 2nd day of November, 2022.